UNION SWITCH & SIGNAL CO. v. JOHNSON.

JOHNSON v. UNION SWITCH & SIGNAL CO.

(Circuit Court of Appeals, Third Circuit. February 4, 1896.)

Nos. 36 and 37.

1. RES JUDICATA—CONTRACTS—INDEPENDENT STIPULATIONS.

An inventor and owner of patents made a contract with a corporation, containing, in separate clauses, the following provisions, among others: That he should be appointed general manager of the company at a fixed salary; that he should grant to it the exclusive use of his inventions, for which he was to be paid license fees of $3,000 a year; that, in case the contract were terminated, the company should have a license to use all of the inventions theretofore used, on paying therefor $6,500 a year. The contract was to continue ten years, subject to termination by either party, by giving one year's notice in writing. After operating under the contract for something more than a year, until the latter part of 1887, it was then mutually agreed (as evidenced by letters in writing) that "the present contract" should be terminated on July 1, 1888. But, on March 1, 1888, the company peremptorily discharged the inventor from its service. *Held,* that the several clauses of the contract contained independent agreements, and that a recovery of damages for breach of the contract of service was no bar to a subsequent action for license fees at the rate of $3,000 per annum up to July 1, 1888.

2. TERMINATION OF CONTRACT.

The agreement to terminate the contract on July 1, 1888, embraced the whole contract, so that, even if the company continued to use the inventions after that time, it was not liable for license fees at the rate of $6,500; but the only remedy against it was a suit for infringement.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

S. Schoyer, Jr., for Union Switch & Signal Co.
George W. Miller, for Georgina M. Johnson.

Before DALLAS, Circuit Judge, and BUTLER and WALES, District Judges

WALES, District Judge. This was an action brought by Charles R. Johnson, in his lifetime, against the Union Switch & Signal Company to recover the amount of certain moneys alleged to be due to him under the terms of a written contract which had been executed by the parties on the 20th of September, 1886. The action was begun on the 19th of April, 1893. On November 13, 1893, on suggestion of the death of the plaintiff, Georgina M. Johnson, the executrix of his last will and testament, was substituted as plaintiff on the record and the cause continued. The clauses of the contract which are involved in the present controversy are as follows:

"First. Said Charles R. Johnson is hereby appointed general manager of the said company. He shall have an equal voice with the vice president in all matters relating to the details of the company's business; and, in case of disagreement between him and the vice president, the matter in dispute shall be submitted to the president or board of directors for final and conclusive decision.

"Second. As general manager of said company, said Johnson shall receive pay at the rate of five thousand dollars per year, exclusive of traveling expenses, which are (as in the case of other officials) to be considered as a part of the operation of the company.

"Third. Said Charles R. Johnson hereby grants, sells, and conveys to the said company the exclusive right, except as hereinafter provided, to the use of all the ·inventions that he (the said Johnson) now has relating to the signal business, or that he may hereafter make or acquire, and also the right to use the present inventions of Mr. Henry Johnson relating to signals and switches, and any other which he may hereafter make, or may hereafter so acquire.

"Fourth. Said company hereby covenants and agrees to pay, for the use of said inventions, the sum of three thousand dollars per annum, settlements to be made quarterly."

"Sixth. Said company further hereby agrees to pay to said Charles R. Johnson, in addition to the aforesaid compensation for patents and salary, a sum equal to ten per cent. of the net profits of the company, after· having provided for all the expenses of the operation of the company; but, in reckoning these expenses, it is understood that the interest charge for· the company's bonded and present floating debt shall not in any case exceed nine thousand dollars per year, nor shall the salaries of the other officers be increased without the consent of the said party of the second part.

"Seventh. It is mutually agreed that this contract shall continue for a period of ten years, subject to termination by either party, however, by one year's notice, in writing, to the other party at any time after the second year, or by the death of Charles R. Johnson, or his permanent inability to perform his duties as general manager.

"Eighth. It is further mutually covenanted and agreed that, in the event of the termination of this agreement, the said company, by reason of the expenditures that shall have been made during the continuance of this agreement, shall have a license, not exclusive, to use all the inventions that may have been used in carrying on the business of the company, on the payment of sixty-five hundred dollars per year, said sum to be paid quarterly, and shall be entitled to purchase from the said Charles R. Johnson, or his executors, the exclusive right to use all the inventions upon as favorable terms as he or his executors may be willing to grant to any other parties."

Charles R. Johnson had·been in the employment of the defendant company prior to the 20th of September, 1886, and it was stipulated in the contract that the payments under it should date from July 1, 1886. No change was made in the terms of the contract, and both parties continued to act under it until on or about the 1st of January, 1888, when, after several letters had passed between Charles R. Johnson and the president of the defendant company in reference to some new arrangement, it was finally agreed by them that the contract should cease and determine on July 1, 1888. This action on the part of the president was ratified by the directors of the· company, and notice of the fact given to Mr. Johnson. On the 1st of March, 1888, the defendant peremptorily dismissed the plaintiff's decedent from its service, on the ground of his alleged unfaithfulness to its interests.

In his statement of demand, the plaintiff's decedent claimed— First, that under the fourth clause of the contract there was due to him, on the 1st day of July, 1888, the sum of $1,500 for license fees for the six months ending June 30, 1888, being two quarters' dues, at the rate of $3,000 per year; and, secondly, that by virtue of the eighth clause of the contract, the defendant, having continued, after the 1st day of July, 1888, to exercise the license to use the inventions mentioned in the contract, and to make, use, and sell

appliances thereunder, there were justly due to him 19 quarterly payments of royalties or license fees, of $1,625 each, from the 1st day of July, 1888, to April 1, 1893, with interest on each payment from the time it fell due.

The circuit court directed the jury to render a verdict for the first, and to disallow the second, claim of the plaintiff. Both parties have filed exceptions to the charge of the court.

1. At the trial below the defendant company produced an exemplified copy of the record of the proceedings had in an action in the superior court of the city of New York, brought by Charles R. Johnson against the Union Switch & Signal Company, and which terminated in a judgment for the plaintiff in the action for the sum of $4,155.67, which was fully paid and satisfied by the defendant. This judgment having been obtained for a breach of the contract of September 20, 1886, the defendant's counsel requested the circuit court to instruct the jury that it was a bar to the recovery by the plaintiff in the present action, of any sum of money now claimed under the fourth clause of the agreement; and the refusal of the court to so charge is assigned for error. The position of the defendant company is that the judgment obtained in the New York court was in full satisfaction and discharge of all claims and demands growing out of the fourth clause. An inspection of the record shows that the complaint in the New York action originally embraced two causes of action,—the first one being for royalties or license fees alleged to be due under the fourth clause of the contract, from the 1st of January to the 1st of March, 1888; and the second one being for damage for a breach of the contract by the wrongful discharge of Johnson. At the trial of the New York case the plaintiff was compelled by the court, on motion of the defendant's counsel, to elect which cause of action he would prosecute, and he chose to proceed with the second one. These royalties were not claimed or recovered in that action, and they have never been paid. The contract of September 20, 1886, contained several independent agreements, and the breach of one of them did not constitute a breach of all. The discharge of Mr. Johnson from the service of the company did not necessarily constitute a breach of the stipulation to pay royalties mentioned in the fourth clause, which remained in force until July 1, 1888, when the whole contract was to terminate by the agreement of the parties. Whether Mr. Johnson had or had not remained in the service of the defendant until July 1, 1888, he would still have been entitled to receive payment of the royalties until that date. The royalties were analogous to rent accruing and falling due at the end of a fixed term, and it is not denied that the company continued to use the patented inventions during the two quarters sued for. The services of Mr. Johnson had been dispensed with on March 1, 1888, but the contract in other respects remained in force until the 1st of July, 1888. The judgment in the New York case was for damages sustained by the wrongful discharge of Mr. Johnson from the employment of the company, and in no manner affected the payment of the royalties mentioned in the fourth clause, which, at the date of his discharge, were not due.

On this point the learned judge of the circuit court, in his charge to the jury, said:

"From an examination of the record in the New York case, I am of opinion that these royalties were not claimed or recoverable in that suit under the second cause of action, upon which the verdict and judgment were based."

And in this instruction there was no error.

2. The other cause of action in the present suit relates to the license dues which are claimed under the eighth clause of the contract of September 20, 1886. In the statement of claim it is alleged:

"That, prior to said 1st of March, 1888, and in about the month of January, 1888, it had been agreed by and between the plaintiff and the defendant that the contract hereinbefore set forth should be and become and be considered as duly terminated on the 30th day of June, 1888, without any written notice or other notice, and that plaintiff's connection with defendant's business should cease at that time the same as if a notice of one year had been given under and according to the provisions of the seventh clause of said contract, and that from and after said 1st of July, 1888, the license to use the inventions specified should continue as provided in the eighth clause of said contract, and defendant should thereafter pay said license dues, as provided in the eighth clause of said contract, quarterly, at the rate of six thousand five hundred dollars ($6,500.00) per year."

No evidence was produced at the trial to establish this averment, and no such expressed agreement was proved, nor was any evidence offered from which it could be implied. The proof that the parties agreed to terminate the contract was furnished by the correspondence between Mr. Johnson and the president of the company. Under date of November 25, 1887, Mr. Johnson wrote to the president:

"Dear Sir: Replying to your favor of the 24th inst., you are right in supposing that I should prefer to have the present contract terminate not later than the 1st day of July next, and we will have it so mutually understood unless other arrangements are made."

To this Mr. Westinghouse, the president, replied, on the 29th of November, 1887:

"Dear Sir: I am in receipt of your letters of the 24th and 25th. According to the letter of the 25th, we are agreed that your present contract with the company shall terminate the 1st of July next."

In January, 1888, as already stated, the board of directors of the company ratified the action of its president in consenting to the termination of the contract, and Mr. Johnson was notified of the fact. The circuit court held that this correspondence, together with the subsequent ratification by the board of directors, rescinded the contract, in toto, from and after the 1st of July, 1888, and further, that the eighth clause of the contract—

"Did not impose a liability upon the defendant company on the termination of that contract, but merely gave the defendant the right to secure a license to use the Johnson patents, if it elected to take a license. * * * The agreement of the parties, as embodied in their correspondence, is simply that the agreement of September, 1886, should terminate on the 1st of July, 1888. No license was ever taken by the defendant company from Johnson."

Further on in the charge the court said:

"There is evidence in this case tending to show that, after the 1st of July, 1888, and running through the balance of that year, some use was made by

the defendant company of some of the Johnson patented devices. There is no evidence, however, that any of the devices were manufactured by the defendant after the 1st of March, 1888, and such user as was made by the defendant, after that date, of any of these Johnson devices was of articles that had been manufactured while Charles R. Johnson was manager of the concern, and had gone into the stock of the company. In certain instances, some minor parts were made by the defendant company to put the old manufactured devices into complete and operative working order; but substantially all the Johnson devices which the company used after March 1, 1888, were taken out of the old stock of the concern. The company claims that it had a right so to use these articles. Whether the company had such a right it is not necessary for us now to decide. If that use was not rightful, the defendant company is answerable to the plaintiff in an action for the infringement of the patents; but damages for such infringement are not recoverable in this action."

The several assignments of error which have been filed by the plaintiff below may be found in the following objections to the charge of the court: Finding (1) that there was a rescission of the contract, in toto, on the 30th of June, 1888; (2) that clause 8 gave to the defendant merely an option to have a license upon the termination of the contract; (3) that the question of fact whether the defendant had exercised the option should have been left to the jury; (4) that the intention of the parties in agreeing to terminate the contract on the 30th of June, 1888, should have been left to the jury. It is claimed on the part of the plaintiff that the agreement to terminate the contract was intended to be, and was, in legal effect, the same as if the written notice had been given, as provided for in the seventh clause, and that, consequently, under the provisions of the eighth clause, the defendant was bound to pay the license fee from and after the 30th of June, 1888, at the rate of $6,500 per year. It is also contended by the plaintiff that the original contract provided for just the case shown, and that, upon a total or absolute termination, without any further agreement, the eighth clause would come into operation.

The intention of the parties and the meaning of the agreement to put an end to their former contract are to be gathered from the correspondence which was had between the plaintiff's decedent and the president of the defendant company; and from this it is plainly evident that their purpose was to annul the contract entirely. That they had the power to do this cannot be disputed. It would be a novel doctrine to hold that the parties to a contract, where the interests of third persons are not concerned, are incompetent to alter or rescind it. It was in reply to Mr. Johnson's proposal that Mr. Westinghouse wrote: "We are agreed that your present contract with the company shall terminate not later than 1st of July next,"—thus making a new agreement, which would repeal the old contract on a future day, and release both parties from the terms of the latter. This was the only evidence before the court in reference to this particular matter, and there was no error in the refusal to leave the question of intention to the jury.

The construction which was given to the eighth clause was that it did not impose upon the defendant company the burden of the specified royalties unless it elected to take a license. The same interpre-

tation had been placed upon this clause by the court of appeals of the state of New York, in Johnson v. Signal Co., 129 N. Y. 653, 29 N. E. 964. If this construction be the true one, and we see no reason to doubt its correctness, the termination of the contract according to the manner provided for in the seventh section could have made no difference in the liability of the defendant. The right to take a license would have remained an optional one in any event.

It was insisted upon that the jury should have been permitted to determine whether the defendant had exercised the option of using any of the Johnson inventions after the 30th of June, 1888. The circuit court very properly refused this request. The voluntary agreement to terminate the contract of September 20, 1886, wiped out the whole of it, including the optional clause; and, if the defendant company had, after the date fixed for the termination, used the inventions, it would not have been liable under the terms of a contract which no longer existed, but perhaps might be subjected to suits for infringement.

We have found no errors in the record, and the judgment of the circuit court is therefore affirmed.